# IN THE COURT OF APPEALS OF IOWA

No. 19-1195
Filed January 9, 2020

**IN THE INTEREST OF M.H.,**
**Minor Child,**

**K.H., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Daniel J. McGinn of McGinn, Springer & Noethe, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Roberta J. Megel of State Public Defender Office, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

A mother appeals the juvenile court decision terminating her parental rights. She claims the evidence does not support the grounds for termination and the court should have granted her additional time to achieve reunification with the child. We find sufficient evidence supports a ground for termination, an extension is not warranted, and termination is in the best interests of the child. We affirm.

## I.     Background Facts & Proceedings

K.H. is the mother of M.H., who was born in 2018. The child was removed from the mother's care on June 24, 2018, after the mother's paramour caused visible bruising on the infant. The mother called the police and reported her paramour's actions. The child was removed due to concerns the paramour would return to the mother's home.

On August 8, the mother participated in a substance-abuse and mental-health evaluation. In her evaluation, the mother disclosed marijuana, alcohol, and cocaine use during the prior three years. She was diagnosed with a "mild substance use disorder" relating to marijuana and a screening test revealed a "low probability" of a substance use disorder. She was tested for illegal substances, which came back negative. The mental-health portion of the evaluation indicated a moderate probability of an adjustment disorder. The evaluator recommended outpatient treatment for both substance-abuse and mental-health therapy.

On August 13, the court adjudicated the child in need of assistance (CINA). At the adjudication hearing, the court ordered the mother to "participate in family safety, risk, and permanency services" (FSRP), submit to random drug screens,

and obtain a substance-abuse evaluation if she tested positive for illegal substances. The child was placed with a foster family.

The mother obtained a no-contact order, which the paramour violated multiple times during the CINA proceedings. The paramour had assaulted the mother in the past. The mother entered into a residential domestic-abuse program at Phoenix House, where she participated in therapy and she progressed to semi-supervised visits

Following a dispositional hearing in September, the court ordered a psychological evaluation, and the department of human services (DHS) recommended intensive therapy. The court noted the mother was "actively participating in services required of this court" but was struggling with healthy relationships.

In November, the mother walked out of Phoenix House without notifying anyone where she was going. DHS returned her visits to being fully-supervised. The mother returned briefly to Phoenix House in December, but she was discharged due to her absence.

In December, the court ordered another substance-abuse evaluation and the psychological evaluation.[1] The court ordered the mother to submit to random drug screens. DHS scheduled the mother for eleven drug screens from December to April. The mother did not submit to any testing. She testified she never received notice of the testing, denying having received any texts or a letter from the DHS

---

[1] The mother testified at the termination hearing that she could not afford the evaluation and substance-abuse assessment, but she did not inform DHS or the court of any lack of insurance nor did she seek assistance to pay for the required evaluations and therapy.

worker about the testing. She did not reach out to DHS or her FSRP worker to ask about complying with the court's order.

The mother moved several times after leaving Phoenix House in November, finally obtaining her own apartment in Omaha in May 2019. She did not take steps at any time after moving to Omaha to begin the interstate placement paperwork necessary for the child to return to her. The mother did not attempt to arrange to complete a domestic-abuse program or set up mental-health or substance-abuse therapy after leaving Phoenix House.

The mother obtained part-time employment in Omaha in November 2018. At the time of the termination hearing, she was to begin training for a full-time position the next week and would acquire health insurance through her employer.

On July 10, the court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2019).[2] She appeals.

## II.    Standard of Review

We review termination-of-parental-rights cases de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). There must be clear and convincing evidence of grounds for termination under section 232.116(1) to uphold an order for termination of parental rights. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence means there are "no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* (citation omitted). The paramount concern in termination proceedings is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

---

[2] The court also terminated the parental rights of any potential father. That decision has not been appealed.

### III. Analysis

The mother claims clear and convincing evidence does not support any of the three grounds for termination of her parental rights. She also requests an extension of time to work toward reunification and claims termination is not in the best interests of the child.

**A. Grounds for termination.** First, we agree with the mother the evidence does not support termination under paragraph "*l*." For termination to occur under paragraph "*l*," in addition to a CINA adjudication and removal from the parent's custody, the court must find the parent "has a severe substance-related disorder" presenting a danger to the parent or others based on prior acts and the child cannot be returned within a reasonable period of time. Iowa Code § 232.116(1)(*l*). The evidence in the record does not establish the mother has a "severe substance-related disorder." Under all the circumstances of this case, the State has not proved this subsection by clear and convincing evidence.

However, "[o]n appeal, we may affirm the juvenile court's termination order on any ground we find supported by clear and convincing evidence." *D.W.*, 791 N.W.2d at 707. Termination under paragraph "h" requires the child be three years old or younger, adjudicated CINA, removed from the parents for at least six of the last twelve months with any trial period with the parent under thirty days, and unable to be returned to the parent's custody at the time of the hearing. Iowa Code § 232.116(1)(h). The first three elements are undeniably met here. The mother challenges the fourth element, claiming the child can be immediately returned to her custody and care.

In determining termination to be appropriate, the court stated,

> [The mother] has failed to remove continuing issues regarding her mental health, substance abuse and domestic abuse. [K.H.] shows a complete inability to recognize the dangers others pose to her and her child. She had a year to remove herself from the circumstances that brought her before this court. She shows a total lack of understanding and disregard for her child's health, safety and wellbeing.

The mother has known since August 2018 of her need for mental-health and substance-abuse therapy and has made no effort to pursue either on her own. Despite the domestic-abuse history of herself and the child, she did not complete any domestic-abuse program. She did not follow through with requested drug screens. She was not consistent in attending visitation until the last months before the termination. She has not sought to have any of her homes or companions approved by DHS to be around the child.

In other words, clear and convincing evidence shows the child cannot be safely returned to her care at the present time.

**B.      Six-month extension.**  The court also determined an extension was not warranted, stating:

> The same problems that precipitated the child's removal from his parent's care—untreated chemical dependency, untreated mental health problems, lack of appropriate housing and employment, minimal compliance, criminal activity, incarceration, and lack of verification or commitment, failure to protect—exist after over a year of services. The parents have shown that they are not prepared to care for their child. There is no evidence that giving them additional time to address their problems would be fruitful in the near future.

We do note some of the listed issues—lack of appropriate housing and employment, criminal activity, and incarceration—clearly do not relate to the mother. We applaud the progress the mother has made in obtaining employment and housing. But her lack of effort in pursuing any type of therapy or utilizing

offered services—even when told reunification with her child depended on compliance with the court's orders for evaluation and treatment—is very concerning. The mother is still learning how to be an adult.

"Children simply cannot wait for responsible parenting. . . . [Parenting] must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). The legislature established the time frame for a parent to demonstrate the child can be entrusted to their care—in the case of a child under four years old, that time frame is six months. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). Moreover, to grant an extension of time, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes" providing a basis to determine the child will be able to return to the parent at the end of the additional six months. Iowa Code § 232.104(2)(b). Based on the mother's past behavior, we cannot say another six months would eliminate the need for removal. We find a six-month extension is not warranted.

**C.    Best interests of the child.**  The mother claims termination of her parental rights is not in the best interests of the child.

When considering whether parental rights should be terminated, we "shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). This consideration may also include "the ability of the parent to properly care for the child and the presence of another family to provide the care." *D.W.*, 791 N.W.2d at 708. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a

parent will learn to be a parent and be able to provide a stable home for the child." *A.M.*, 843 N.W.2d at 112 (citation omitted).

The child has been in the care of the foster family since infancy. "[P]atience with parents can soon translate into intolerable hardship for their children." *J.E.*, 723 N.W.2d at 800. M.H. deserves permanency. We find termination is in the child's best interests. We therefore affirm.

**AFFIRMED.**